# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

JAYSEN BELL,

                Petitioner,

       -vs-

ROBIN KNAB, Warden,

                Respondent.

:

:

:

:

Case No. 1:10-cv-469

District Judge William O. Bertelsman
Magistrate Judge Michael R. Merz

---

## REPORT AND RECOMMENDATIONS

Petitioner Jaysen Bell brings this habeas corpus action pursuant to 28 U.S.C. § 2254 to obtain release from the sentence he is serving in Respondent's custody.  Mr. Bell was convicted of one count of sexual battery and three counts of sexual imposition in the Clermont County Common Pleas Court in April, 2008.  He pleads the following grounds for relief:

> **Ground One**
> Petitioner was denied his fourth amendment right to be free from unreasonable searches and seizures when his home was searched and evidence seized pursuant to an invalid search warrant, and the trial court denied his motion to suppress and the unlawfully seized evidence was admitted against him at trial.
>
> **Supporting Facts:**
> When the police officer prepared and swore out the affidavit to obtain a search warrant for petitioner's house, he purposely omitted material information from the affidavit [sic]. Omitted matters included prior false allegations by the victim, inconsistent statements, and logical impossibilities. Had the reviewing magistrate known the truth, it would have been apparent that this information did not come from a reliable source, and the warrant would not have been issued. Petitioner's fourth amendment rights were further violated when the

state trial court denied petitioner's motion to suppress and admitted the unlawfully obtained evidence against petitioner at trial.

**Ground Two:**
Petitioner was denied his fourth and sixth amendment rights when a witness, acting as a state agent and under the state's direction, contacted petitioner and elicited and recorded incriminating statements that were later used at petitioner's trial.

**Supporting Facts:**
While petitioner was under investigation, but before he was indicted, his retained counsel had advised the investigating officer to have no further contact with petitioner. The investigating officer ignored counsel's direction and arranged for one of the alleged victims, under police direction and control, to contact petitioner in order to elicit and record incriminating statements. The statements were obtained by the police and admitted against petitioner at his trial.

**Ground Three:**
Petitioner was denied the right to effective assistance of counsel as guaranteed by the fifth, sixth, and fourteenth amendments to the United States Constitution.

**Supporting Facts:**
In a failed effort to demonstrate that email messages could be fabricated, defense counsel attempted to use a trick that failed miserably in front of the jury. As a result, the trial court required defense counsel to apologize to the jury for his misconduct. This failed trick made it appear that the defense was deceptive and could not be trusted. This was not a debatable trial tactic - it fell well below the objective standard of reasonable representation. Petitioner suffered severe prejudice and he must be granted a new trial.

**Ground Four:**
Petitioner was denied due process of law in violation of the fourteenth amendment when the prosecutor engaged in numerous instances of prosecutorial misconduct.

**Supporting Facts:**
The prosecutor engaged in prosecutorial misconduct by making emotional pleas to the jury, denigrating petitioner's defense, commenting on matters not in evidence, and making highly prejudicial arguments and insinuating that defense counsel was dishonest when none of it was supported by the evidence.

(Petition, Doc. No. 1, PageID 5-10.)

Three additional grounds for relief are added in the Memorandum in Support

> **Ground Five**
> Petitioner was denied his right to present a meaningful defense pursuant to the Sixth and Fourteenth Amendments when the trial court prohibited him from admitting the favorable results of his polygraph examination at trial.
>
> **Ground Six**
> Petitioner was denied due process of law in violation of the fourteenth amendment when the trial court unreasonably allowed unauthenticated documents to be admitted against petitioner and the admission of these records deprived petitioner of a fundamentally fair trial.
>
> **Ground Seven**
> Petitioner was denied due process of law in violation of the Fifth and Fourteenth amendments by being found guilty when such verdicts were based on insufficient evidence.

(Memorandum, Doc. No. 1-1, PageID 204, 207, 212.)

## Analysis

## Ground One

In his first ground for relief, Mr. Bell claims the trial court violated his Fourth Amendment rights when it failed to suppress and then later admitted evidence seized from him on the basis of an invalid search warrant. Respondent asserts this claim is not cognizable in habeas corpus because of the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465 (1976).

Federal habeas corpus relief is not available to state prisoners who allege they were convicted on illegally seized evidence if they were given a full and fair opportunity to litigate that question in the state courts. *Stone v. Powell,* 428 U.S. 465 (1976). *Stone* requires the district court

to determine whether state procedure in the abstract provides full and fair opportunity to litigate, and Ohio procedure does. The district court must also decide if a Petitioner's presentation of claim was frustrated because of a failure of the state mechanism. Habeas relief is allowed if an unanticipated and unforeseeable application of procedural rule prevents state court consideration of merits. *Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982). The *Riley* court, in discussing the concept of a "full and fair opportunity," held:

> The mechanism provided by the State of Ohio for resolution of Fourth Amendment claims is, in the abstract, clearly adequate. Ohio R. Crim. P. 12 provides an adequate opportunity to raise Fourth Amendment claims in the context of a pretrial motion to suppress, as is evident in the petitioner's use of that procedure. Further, a criminal defendant, who has unsuccessfully sought to suppress evidence, may take a direct appeal of that order, as of right, by filing a notice of appeal. See Ohio R. App. P. 3(A) and Ohio R. App. P. 5(A). These rules provide an adequate procedural mechanism for the litigation of Fourth Amendment claims because the state affords a litigant an opportunity to raise his claims in a fact-finding hearing and on direct appeal of an unfavorable decision.

*Id*. at 526.

Petitioner responds that he did not have a full and fair hearing on this issue (Response to Return of Writ, Doc. No.14, PageID 669-670). However, Petitioner does not identify any defects in the process he was afforded for litigating this claim. He was able to present the claim in a motion to suppress hearing in the trial court and to appeal from the denial of that motion on direct appeal. He admits

> The trial court and state court of appeals were both aware that: 1) Officer Wood failed to disclose the critical fact that in the past T.T. had made false allegations of sexual abuse against other family members; 2) Officer Wood failed to disclose that T.T. had made inconsistent statements on key aspects of the case; 3) Officer Wood failed to disclose exculpatory and contradictory statements made by

-4-

> T.W.; and 4) When Officer Wood attempted to corroborate the claims
> of abuse by contacting another foster child who would have been
> present in the home, not only did the other foster child not
> corroborate the abuse, his statement corroborated Bell's innocence –
> a critical matter withheld from the reviewing magistrate.

*Id.* That is, he was able to place before both courts the facts on which he relies for suppression; his complaint is that neither state court evaluated those facts as he believes they should have. The Court of Appeals' discussion of this assignment of error was anything but summary. It reviewed the omitted material Petitioner claims should have been in the search warrant affidavit and concluded: Based on our review of the record, however, and even after including the alleged 'critical' omissions to the submitted affidavit, we find the contents of Officer Wood's affidavit sufficient to establish probable cause to support the issuance of the search warrant. *State v. Bell,* 2009 Ohio 2335, 2009 Ohio App. LEXIS 2112 ¶ 11 (Ohio App. 12th Dist. May 18, 2009).

Petitioner essentially claims he did not get a fair hearing because he did not receive the correct result. To adopt that reading of *Stone* would be to render it irrelevant, for a federal habeas court would have to review the merits of the Fourth Amendment claim to decide if the result was correct. But that is precisely what *Stone* forbids; there is to be no merit review if the state process provided a full and fair opportunity to litigate the claim.

Because the state process actually afforded Petitioner in this case was full and fair, his first ground for relief should be dismissed under *Stone v. Powell.*

**Ground Two**

In his second ground for relief, Petitioner complains that the State used one of the victim-

witnesses as an agent to elicit incriminating information from Petitioner after Petitioner's attorney told Officer Wood to have no more contact with Bell, relying principally on *Massiah v. United States*, 377 U.S. 201 (1964). Respondent defends this claim on the merits, admitting the contact occurred but noting, as Bell admits, that it occurred before indictment and asserting that the Supreme Court has never held a suspect is entitled to counsel during pre-indictment investigation (Return of Writ, Doc. No. 11, PageID 256-258).

In his Response, Petitioner writes:

> Bell must concede that he is asking for an expanded interpretation of the rule of law set forth in *Massiah v. United States*, 377 U.S. 201, 206 (1964). And as pointed out by Respondent, this precise issue has never been squarely before the United States Supreme Court. However, this case demonstrates a clear violation of the spirit of the rule behind *Massiah*.

(Response, Doc. No. 14, PageID 670.)

Bell's concession is fatal to his second ground for relief. Under 28 U.S.C. § 2254(d)(1) a federal habeas court may grant relief on a claim adjudicated on the merits in the state courts only if the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. "'Clearly established federal law, as determined by the Supreme Court of the United States' refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Terry Williams v. Taylor*, 529 U.S. 362 at 412 (2000). Here the Court of Appeals applied the relevant Supreme Court precedent, *Kirby v. Illinois*, 406 U.S. 682 (1972). In *Kirby* the Supreme Court held that the Sixth Amendment right to counsel attaches "only after the initiation of adversary judicial criminal proceedings – whether by formal charge, preliminary hearing, indictment, information, or arraignment." *State v. Bell, supra*, ¶ 38.

-6-

Because the Court of Appeals application of *Massiah* and *Kirby* was objectively reasonable, Bell's second ground for relief is without merit.

## Ground Three

In his third ground for relief, Bell asserts he received ineffective assistance of trial counsel when his attorney failed in his attempt to demonstrate that emails can be altered. Defense counsel and an associate had altered an email they received from the prosecution's expert, Mr. Ausdenmoore, to make it appear that Ausdenmoore had referred to this case as being bogus. Counsel proceeded inappropriately by asking Ausdenmoore if he still believed this was a bogus case – referring to the fake prior inconsistent statement. The prosecutor of course interrupted to inquire about a good faith basis for the supposed prior statement and counsel had to admit that he had none, but was trying to set the stage for an admission by Ausdenmoore that email content can be changed. The tactic backfired when counsel was required to apologize to the jury for having tried to do "a demonstration" in "the wrong way."

In deciding this claim on the merits, the court of appeals held:

> [*P76]  In order to successfully establish a claim of ineffective assistance of counsel, an appellant must satisfy both prongs of the two-part showing required in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L. Ed. 2d 674. First, an appellant must show that his trial counsel's performance was deficient; and second, that the deficient performance prejudiced the defense to the point of depriving the appellant of a fair trial. *State v. Cox,* Butler App. No. CA2005-12-513, 2006 Ohio 6075, P 29, citing *Strickland*.

> [*P77]  In order to establish the first prong, an appellant must show that his counsel's representation "fell below an objective standard of reasonableness." *Strickland* at 688. However, attorneys are given a

"heavy measure of deference" in their decision making and there exists a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. In order to establish the second prong, an appellant must show "a reasonable probability that, but for counsel's actions, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Smith*, 2009 Ohio 197 at P48. The failure to make an adequate showing on either the "performance" or "prejudice" prongs of the Strickland standard is fatal to an appellant's claim. *Strickland* at 697.

[*P78] Appellant argues that his trial counsel was ineffective because his trial counsel engaged in "trial tactics that [gave] the undeniable impression to the jury that the defense is being deceptive and cannot be trusted" when he made a "bizarre and ill-advised attempt" to demonstrate the ease in which one could alter on-line conversations and e-mails. (Emphasis added.) However, while we may agree with appellant that the attempted demonstration was nothing short of a "debacle," even debatable trial tactics do not constitute ineffective assistance of counsel. *Strickland* at 689; *State v. Darrah*, Warren App. No. CA2006-09-109, 2008 Ohio 6762, P93.

[*P79] In addition, appellant has not established that, but for his trial counsel's unprofessional errors, he would have been acquitted of the charges filed against him. As noted previously, the state presented extensive evidence, including testimony from both T.T. and T.W., the alleged teenage victims, describing the explicit sex acts appellant performed upon them. As a result, and in light of the evidence presented to support his conviction for sexual battery and sexual imposition, appellant has not demonstrated that he would have been acquitted of the charges absent his trial counsel's failed demonstration. Accordingly, appellant's fourth assignment of error is overruled.

*State v. Bell, supra*, ¶¶ 76-79.

Petitioner first argues that his trial counsel's behavior was not a debatable trial tactic. The Magistrate Judge disagrees. Because the prosecution was relying in part on email content to prove its case, it was perfectly appropriate to attempt to demonstrate that email content can be changed. Trial counsel did not intend to attempt to persuade the jury that Mr. Ausdenmoore believed the case

was bogus. Instead, the attempt was to show that a person who plainly did not believe that could be shown purportedly to have said it by doctoring the content of an email he sent. Counsel certainly went about it in the wrong way, but his apology is more abject than it need to have been, given his proper purpose.[1]

Petitioner also argues that the court of appeals applied the wrong standard, relying on *United States v. Dominquez Benitez*, 542 U.S. 74, 83, n.9 (2004). That case confirms in another context the required finding for prejudice in an ineffective assistance of counsel case, to wit, "that the probability of a different result is 'sufficient to undermine confidence in the outcome.'" 542 U.S. at 83, citing *Strickland* and *United States v. Bagley*, 473 U.S. 667 (1985). Petitioner accuses the Court of Appeals of requiring "that a defendant prove by a preponderance of the evidence that but for error things would have been different." (Response, Doc. No. 14, PageID 673.)

On this point, Petitioner misreads the Court of Appeals' opinion. The only place that court uses the word "preponderance" is with the search warrant affidavit issue. In contrast, in discussing the prejudice prong of *Strickland*, it applies precisely the standard Petitioner says it should apply: "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Bell, supra*, ¶ 77.

The Court of Appeals' decision on the ineffective assistance of trial counsel claim is neither contrary to nor an objectively unreasonable application of the relevant Supreme Court case law. Ground Three should therefore be dismissed.

---

[1] Of course in the context of the trial, that degree of apology may have seemed necessary to blunt any impression the jury may have had that the trial judge was angry with counsel. But the degree of apology is also a trial tactic not properly second guessed in habeas corpus.

**Ground Four**

In his fourth ground for relief, Bell asserts he was denied his Fourteenth Amendment right to due process and a fair trial when the prosecutor engaged in numerous instances of misconduct. The Warden asserts this claim is procedurally defaulted.

The procedural default defense in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones,* 238 F. 3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia,* 372 U.S. 391 (1963).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Eley v. Bagley*, 604 F.3d 958, (6th Cir. 2010)

*Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407 (2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin,* 785 F.2d, at 138.

Ohio does have a contemporaneous objection rule that parties must preserve errors for appeal by calling them to the attention of the trial court at a time when the error could have been avoided or corrected, set forth in *State v. Glaros*, 170 Ohio St. 471, 166 N.E.2d 379 (1960), paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162, 694 N.E.2d 932 (1998). That rule was enforced against Bell by the Ohio Court of Appeals. *State v. Bell, supra*, ¶ 90. Reservation of authority to review in exceptional circumstances for plain error is not sufficient to constitute

application of federal law. *Cooey v. Coyle,* 289 F.3d 882, 897 (6th Cir. 2002); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000). A state appellate court's review for plain error is enforcement, not waiver, of a procedural default. *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle,* 271 F. 3d 239 (6th Cir. 2001), citing *Seymour v. Walker,* 224 F. 3d 542, 557 (6th Cir. 2000)(plain error review does not constitute a waiver of procedural default); *accord, Mason v. Mitchell,* 320 F.3d 604 (6th Cir. 2003).

At the fourth stage of *Maupin* analysis, a habeas petitioner can avoid the procedural default if he can show excusing cause and prejudice or a fundamental miscarriage of justice. Petitioner does not attempt to show cause and prejudice, but claims a fundamental miscarriage of justice would result from not setting this conviction aside. However, the fundamental miscarriage of justice exception is limited to cases where a habeas petitioner can show he is actually innocent of the crime of which he was convicted. *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986). The "miscarriage of justice" standard, which is sometimes used synonymously with "actual innocence," requires some showing of actual innocence. In other words, they are the same standard, not alternative ways of avoiding a procedural default. *Calderon v. Thompson,* 523 U.S. 538, (1998). To come within the actual innocence exception to the required showing of cause and prejudice with respect to an abuse of the writ, a habeas petitioner or §2255 movant must show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. That is, the petitioner must show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in the light of the new evidence he or she is tendering. *Schlup v. Delo*, 513 U.S. 298 (1995). Petitioner here has not tendered any new evidence of actual innocence. Thus his fourth

ground for relief is procedurally defaulted and should be dismissed.

## Ground Five

In his fifth ground for relief, Bell asserts his Sixth and Fourteenth Amendment rights were violated when he was not permitted to introduce the favorable results of his polygraph examination. The Warden argues that this Court cannot consider error in state evidentiary rulings (Return, Doc. No. 11, PageID 265), but Bell confirms that he is presenting this solely as a constitutional claim (Response, Doc. No. 14, PageID 676-677). The Warden objects that Bell did not fairly present this federal constitutional claim to the state courts; Bell makes no response to this defense.

To preserve a federal constitutional claim for presentation in habeas corpus, the claim must be "fairly presented" to the state courts in a way which provides them with an opportunity to remedy the asserted constitutional violation, including presenting both the legal and factual basis of the claim. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506 (6th Cir. 1993); *Riggins v. McMackin,* 935 F.2d 790 (6th Cir. 1991). The claim must be fairly presented at every stage of the state appellate process. *Wagner v. Smith,* 581 F.3d 410, 418 (6th Cir. 2009).

Merely using talismanic constitutional phrases like "fair trial" or "due process of law" does not constitute raising a federal constitutional issue. *Slaughter v. Parker,* 450 F.3d 224, 236 (6th Cir. 2006); *Franklin v. Rose,* 811 F.2d 322 at 326 (6th Cir. 1987); *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000), *citing Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984). Mere use of the words "due process and a fair trial by an impartial jury" are insufficient. *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006); *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004)(same). "A

lawyer need not develop a constitutional argument at length, but he must make one; the words 'due process' are not an argument." *Riggins v. McGinnis*, 50 F.3d 492, 494 (7th Cir. 1995).

In his Brief on appeal, Bell stated his Sixth Assignment of Error as "The trial court erred to the prejudice of defendant-appellant by not permitting him to admit evidence of his polygraph examination." (Return of Writ, Doc. No. 11, PageID 354.) As the sole "issue" under this Assignment of Error, Bell's counsel wrote "A criminal defendant is denied the constitutional right to present a defense when he is prohibited from admitting favorable evidence of his polygraph examination." *Id.*

The case law cited on this assignment of error was *State v. Souel*, 53 Ohio St.2d 123,372 N.E.2d 1318 (1978), and *State v. Sharma*, 143 Ohio Misc.2d 27, 2007-Ohio-5404, 875 N.E.2d 1002. *Id.* In neither of those cases did the deciding courts hold there was a constitutional right to admission of polygraph results. In fact *Souel* is, as admitted in the Brief, the Ohio authority precluding polygraph results in the absence of stipulation. In *Sharma*, Judge Hunter of the Summit County Common Pleas Court found polygraph results admissible despite *Souel* in light of Ohio's adoption of the *Daubert* test for scientific evidence and Ohio R. Evid. 702; she relied on Sixth and Fourteenth Amendment concerns in doing so, although she cited no federal law to that effect. Bell did not make a constitutional argument in his appellate Brief, so the question is close. However, given Bell's framing of the issue and his citation of *Sharma*, the Court finds he did fairly present this claim to the state court as a constitutional claim.

The Court of Appeals understood Petitioner was making a claim of right. "Specifically, appellant claims that his "right to present evidence in his defense overrides the rule barring polygraph results." *State v. Bell, supra*, ¶ 45. The Court of Appeals decided this claim on the

-14-

merits, holding there was no error in the trial court's adherence to the rule in *Soul* that there must be a stipulation for polygraph results to be admissible.  *Id.*  ¶ 50.

However, Petitioner has not established that this decision of the Court of Appeals is an objectively unreasonable application of Supreme Court precedent.  He does not cite to the relevant case, *United States v. Scheffer,* 523 U.S. 303 (1998), in which the Supreme Court held that the per se exclusion of polygraph results under military law was not unconstitutional.  If a per se exclusion is not unconstitutional, it is hard to see how Ohio's limited admission practice (requiring a stipulation) could be unconstitutional.

Mr. Bell's fifth ground for relief therefore fails on the merits.

## Ground Six

In his sixth ground for relief, Bell argues that admission of unauthenticated documents deprive him of a fair trial.  The exhibits in question purported to be print-outs of Internet chats and email messages between Bell and T.W., one of the victims.  As with the fifth ground for relief, the Warden again asserts this claim was not fairly presented as a federal constitutional claim to the state courts, but rather solely as a claim under Ohio R. Evid. 901.

In his Brief on appeal, Bell stated as his Second Assignment of Error "The trial court erred to the prejudice of defendant-appellant by admitting records of purported e-mails and web chats that were never properly authenticated."  (Brief, PageID 352.)  As authority he relied on Ohio R. Evid. 901(A), 801, 802, 402, and 403(A) and *State v. Davis*, 62 Ohio St. 3d 326, 581 N.E. 2d 1363 (1991).  *Id.*  Davis interprets Ohio R. Evid. 901.  Bell makes no constitutional argument at all on this

-15-

Assignment of Error.

In deciding this Assignment of Error this Court of Appeals did not understand it was confronted with a constitutional claim. It held the authentication provided was adequate to satisfy the Ohio evidentiary standards. *State v. Bell, supra,* ¶¶ 29-32. It also found Bell's counsel had acquiesced in the admission of this evidence. *Id.* ¶ 28.

In his Response, Bell does not attempt to show that he fairly presented this claim under the Constitution to the state courts. And he cites no Supreme Court precedent to the effect that evidentiary authentication rules rise to the level of constitutional requirements. Therefore the sixth ground for relief is both waived by failure of fair presentation and without merit as involving no colorable constitutional violation.

## Ground Seven

In his last ground for relief, Bell claims he was convicted on insufficient evidence. The state court of appeals considered Bell's manifest weight and insufficient evidence claims together and held:

> [*P55] In his seventh and eighth assignments of error, appellant argues the state provided insufficient evidence to support his conviction, and that his conviction was against the manifest weight of the evidence. In support of this claim, appellant essentially argues his conviction for sexual battery, as well as for three counts of sexual imposition, was in error because the required elements were not supported by credible testimony or evidence. We disagree.

> [*P56] Whether the evidence presented is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997 Ohio 52, 678 N.E.2d 541. An appellate court, in reviewing the sufficiency of the evidence supporting a criminal conviction, examines the evidence in order to determine whether such

evidence, if believed, would support a conviction. *State v. Carroll*, Clermont App. Nos. CA2007-02-030, CA2007-03-041, 2007 Ohio 7075, P117. After examining the evidence in a light most favorable to the prosecution, the appellate court must determine if "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. Proof beyond a reasonable doubt is "proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his own affairs." R.C. 2901.05(D).

[*P57]  Unlike a sufficiency of the evidence challenge, a manifest weight challenge concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other. *Carroll* at P118. An appellate court considering whether a conviction was against the manifest weight of the evidence must review the entire record, weighing the evidence and all reasonable inferences, and consider the credibility of witnesses. *State v. Good*, Butler App. No. CA2007-03-082, 2008 Ohio 4502, P25, citing *Hancock*, 108 Ohio St. 3d 57, 2006 Ohio 160 at P39, 840 N.E.2d 1032. Under a manifest weight challenge, the question is whether, in resolving conflicts in the evidence the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *Good* at P25.

[*P58]  "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." *State v. Wilson*, Warren App. No. CA2006-01-007, 2007 Ohio 2298, P35. Therefore, a determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency. Id.

Sexual Battery: R.C. 2907.03(A)(5)

[*P59]  Initially, appellant essentially claims his conviction for sexual battery was not supported by the manifest weight of the evidence because T.W.'s testimony was not credible. To support this claim, appellant highlights T.W.'s testimony indicating he "lied to teachers, his foster parents, and other authority figures," as well as his inconsistent and contradictory statements provided at trial.

[*P60]  Sexual battery in violation of R.C. 2907.03(A)(5), a third-degree felony, prohibits a person from engaging in sexual conduct with another "when * * * [t]he offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or

-17-

person in loco parentis of the other person." Sexual conduct, defined by R.C. 2907.01(A), includes, among other things, "anal intercourse, fellatio, and cunnilingus between persons regardless of sex * * *."

[*P61]  In this case, T.W. testified that appellant, his former foster parent, would enter his bedroom at night when he was "almost asleep" and "massage" him by rubbing his legs and upper body until he had an erection. T.W. then testified that the "massages" would "slowly escalate" until appellant would put the boy's penis in his mouth. T.W. also testified that he initially lied to police about appellant's alleged inappropriate sex acts because he believed, albeit mistakenly, that he would ultimately be returned to appellant's foster care.

[*P62]  While there may be a question as to T.W.'s credibility, "the weight to be given the evidence, and the credibility of witnesses are primarily for the trier of facts." *Pringle*, 2008 Ohio 5421 at P28, citing *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. As a result, we defer to the jury's decision finding T.W.'s testimony credible, even after being subject to a lengthy cross-examination, because the jury was "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Smith*, Fayette App. No. CA2006-08-030, 2009 Ohio 197, P79.

[*P63]  After reviewing the record, and in light of the foregoing, we cannot say that the jury clearly lost its way in finding T.W.'s testimony to be competent, credible and reliable. In turn, because we cannot say appellant's conviction of sexual battery created such a manifest miscarriage of justice that his conviction must be reversed, we find no reason to disturb the jury's finding of guilt.

Sexual Imposition: R.C. 2907.06(A)(4)

[*P64]  Appellant also claims his conviction for three counts of sexual imposition was against the manifest weight of the evidence because the testimony of T.W., as well as T.T., was not credible, and "there was no evidence other than the testimony of the alleged victims." This argument lacks merit.

[*P65]  Sexual imposition in violation of R.C. 2907.06(A)(4), a third-degree misdemeanor, prohibits a person from having sexual contact with another where the "other person * * * is thirteen years

of age or older but less than sixteen years of age * * *." Sexual contact, as defined by R.C. 2907.01(B), includes, among other things, "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region * * * for the purpose of sexually arousing or gratifying either person."

[*P66] In this case, T.T. testified that appellant would enter his bedroom at night and "massage" him. T.T. further testified that as these "massages" continued that appellant "would go down further until [he] got an erection and then he would begin to masturbate [him]." T.T. also testified that appellant, on at least one occasion, "put his mouth on [his] penis * * *." Furthermore, and as stated previously, T.W. testified that appellant would give him a "massage" by rubbing "around his legs, and around [his] upper body until [he] got an erection * * *." T.W. also testified that appellant would "jack [him] off," and then "he would start putting it in his mouth."

[*P67] Despite this testimony, appellant nonetheless contends that his conviction for sexual imposition was against the manifest weight of the evidence. In support of this argument, appellant calls our attention to R.C. 2907.06(B), which requires some corroboration of the alleged victim's testimony in order for a defendant to be convicted of sexual imposition. *State v. Birkman* (1993), 86 Ohio App.3d 784, 789, 621 N.E.2d 1266.

[*P68] In *State v. Economo,* 76 Ohio St.3d 56, 58, 1996 Ohio 426, 666 N.E.2d 225, the Ohio Supreme Court determined the type of evidence that satisfies the corroboration requirement of R.C. 2907.06(B) in order for a defendant to be convicted of sexual imposition. In so holding, the court concluded that HN20R.C. 2907.06(B) "does not mandate proof of the facts which are the very substance of the crime charged," nor does the corroborating evidence need to be independently sufficient to convict the accused, or even go to every essential element of the crime. *State v. Menke*, Butler App. No. CA2002-01-021, 2003 Ohio 77, P25; *Economo* at 59- 60. Instead, slight circumstances or evidence that tends to support the victim's testimony is satisfactory. *Economo* at 60. Therefore, corroborating evidence is not an element of the offense of sexual imposition, but merely an ancillary evidential requirement. Id. at 60-62.

[*P69] Relying exclusively on R.C. 2907.06(B), appellant argues that there was no corroborating evidence presented to support his conviction for sexual imposition, and therefore, because "there was

-19-

no evidence other than the testimony of the alleged victims," his conviction must be vacated. However, while we recognize that the testimony of several alleged victims to separate, albeit factually similar, incidents will not serve as corroboration, we find that the state presented other sufficient corroborating evidence to support appellant's conviction. See, e.g., *State v. Gardner* (Apr. 24, 1985), Hamilton App. No. C-840522, 1985 Ohio App. LEXIS 6494, 1985 WL 6764 at *3.

[*P70]   Here, the corroborating evidence consisted of Officer Wood's testimony that T.T. discussed with him the specific allegations of sexual abuse, as well as other testimony indicating T.T. discussed the same allegations with a social worker at the Cincinnati Children's Hospital Mayerson Center. In addition, corroborating evidence was  presented indicating T.T. lived with appellant as a foster child during the time in question, and that the pair was found in the local church parking lot after their car became stuck in the mud on the same day T.T. claimed appellant attempted to perform fellatio upon him. Furthermore, there was testimony from R.W., T.W.'s sister, that she saw appellant frequently enter T.W.'s bedroom at night and that, after entering the boy's room, appellant would shut the door behind him. There was also evidence presented that appellant engaged in on-line conversations and e-mails with T.W. discussing the "donkey game," which, as T.W. explained, was a code word for sex. Moreover, the jury heard testimony from Jessica Bell, appellant's wife, indicating appellant had, in fact, massaged their foster children, but that the massages were nothing more than "injuries that were being massaged."

[*P71]   Based on our review of the record, we find this testimony provides sufficient corroborating evidence necessary to satisfy R.C. 2907.06(B), even though the testimony may not have been "independently sufficient to convict" appellant of sexual imposition, since the statute merely requires "[s]light circumstances or evidence" that tend to support the teenage victims allegations. *State v. Gesell*, Butler App. No. CA2005-08-367, 2006 Ohio 3621, P30 (finding sufficient corroborating evidence of sexual imposition even though testifying witness did not see any physical contact occur). As a result, and in light of the foregoing, we cannot say that the jury clearly lost its way in finding the evidence presented by the state supported appellant's conviction for sexual imposition. Therefore, because we cannot say appellant's conviction created such a manifest miscarriage of justice that his conviction must be reversed, we find no reason to disturb the jury's finding of guilt.

> [*P72]  As we have already determined appellant's convictions for sexual battery and sexual imposition were not against the manifest weight of the evidence, we necessarily conclude there was sufficient evidence to support the guilty verdicts in this case. *Hart*, 2009 Ohio 997 at P38. Accordingly, appellant's seventh and eighth assignments of error are overruled.

*State v. Bell, supra*, ¶¶ 55-72.

In reviewing an insufficient evidence claim, this Court must defer twice, first to the determination of the trier of fact and then to the state court evaluation of the claim.  Having reviewed the court of appeals decision, the Magistrate Judge cannot say that it is an unreasonable application of the relevant Supreme Court precedent, *Jackson v. Virginia*, 443 U.S. 307 (1979).  Bell emphasizes proof that the two victims had lied, including previous lies by T.T. about sexual misconduct of others.  But all of that impeachment evidence was before the jury, which chose to believe these two teenage boys.  The Court cannot say the evidence was fanciful or so unreliable that no reasonable juror could have believed it.  As shown by the Court of Appeals opinion, there was competent, albeit impeached, testimony to support each element of each offense of which Petitioner was convicted.

### Conclusion

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability.

August 24, 2011.

s/ **Michael R. Merz**
United States Magistrate Judge

-21-

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).